J-S36037-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.T.S. | : | |
| | : | |
| Appellant | : | No. 91 WDA 2020 |

Appeal from the Judgment of Sentence Entered October 28, 2019
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000132-2019

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED AUGUST 19, 2020

J.T.S.[1] appeals from the judgment of sentence imposed following his jury conviction in the Court of Common Pleas of Indiana County (trial court) of strangulation, terroristic threats, simple assault, recklessly endangering another person and summary harassment.[2]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Initials are used to denote the names of certain individuals in this Memorandum to protect the identity of a minor child.  See Superior Court I.O.P. 424(A).

[2] 18 Pa.C.S. §§ 2718(a)(1), 2706(a)(1), 2701(a)(1), 2705 and 2709(a)(1).

I.

This case arises from a November 26, 2018 dispute between J.T.S. and his former girlfriend, S.M. The couple resided together and have a son, who was two years old at the time.

According to S.M.'s testimony, she and J.T.S. had a contentious relationship and he had been hitting her for a three-month period at the time of the altercation. When S.M. returned to their apartment after spending the night at a friend's home, her son was present and greeted her. S.M. and J.T.S. verbally argued and he told her to leave. When S.M. refused, J.T.S. hit her across the face, causing her to fall to the ground. S.M. then averted J.T.S.'s attempt to throw her down a twenty-step flight of stairs.

The altercation moved to the bedroom, where J.T.S. pushed and spit on S.M. while he called her names and threatened to kill her. J.T.S. strangled S.M. "multiple times" with both of his hands "upwards of ten different instances on that day." (N.T. Trial, 8/19/19, at 24). J.T.S. warned S.M. that he was loading his shotgun and she heard him go to his room, grab his shotgun and load it. S.M. eventually was able to call a friend and neighbor, T.C., who came to the apartment. T.C. diffused the situation and took S.M. to her home. Police Officer Michael Clawson responded to T.C.'s residence and observed blood on S.M.'s neck and bruises on both of her arms. Police arrested J.T.S. and recovered an unloaded shotgun from the apartment.

According to J.T.S., S.M. returned to the apartment while he was taking a nap with their son. J.T.S. told S.M. that she was irresponsible for not returning home earlier to care for their son so that he could go to work and told her to leave the apartment. The encounter escalated when S.M. attempted to grab their son from him and he accidentally scratched a mole on her neck in an effort to stop her. S.M. began "freaking out" and said: "I'm going to have someone come and kill you." (N.T. Trial, at 122). J.T.S. responded: "make sure to let them know that I have a shotgun and I will protect myself and my family." (Id. at 123). S.M. went into her room with her phone and J.T.S. took their son into another room to remove him from the situation. J.T.S. then went into the living room with the shotgun when T.C. arrived at the door and pulled an irate S.M. from the residence.

On August 19, 2019, a jury convicted J.T.S. of the above-listed offenses. On October 28, 2019, the trial court sentenced him to an aggregate term of incarceration of not less than one year less than one day nor more than two years less one day, followed by two years of probation. J.T.S. timely filed a post-sentence motion challenging the weight of the evidence supporting his conviction, primarily on the basis of alleged inconsistencies in S.M.'s testimony. The trial court issued an opinion and order denying J.T.S.'s weight claim and dismissed his motion on December 18, 2019. This timely appeal followed. Counsel for J.T.S failed to comply with the trial court's January 17, 2020 directive to file a Rule 1925(b) statement. The court entered an order

adopting its December 18, 2019 opinion as its Rule 1925(a) opinion on February 18, 2020. See Pa.R.A.P. 1925(a)-(b).

II.

We first address the effect of counsel's failure to file a Rule 1925(b) statement on J.T.S.'s behalf. It is well-settled that "in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998); see also Pa.R.A.P. 1925(b)(4)(vii). However, subsection (c)(3) of the Rule provides a safety net for criminal defendants who relied on counsel to comply with the court's order. See Pa.R.A.P. 1925(c)(3) ("If an appellant represented by counsel in a criminal case was ordered to file a Statement and failed to do so . . . such that the appellate court is convinced that counsel has been per se ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing of a Statement nunc pro tunc, and the preparation and filing of an opinion by the judge.").

Instantly, we conclude counsel's failure to file a Rule 1925(b) statement constitutes ineffectiveness per se. See id.; see also Commonwealth v. Burton, 973 A.2d 428, 432 (Pa. Super. 2009) (counsel's failure to file Rule 1925(b) statement on behalf of defendant seeking to appeal his conviction resulting in waiver of all claims asserted on direct appeal constitutes per se

ineffectiveness). In Burton, the en banc panel concluded remand was not necessary because the trial court issued an opinion addressing the appellant's sole claim.

Likewise, in the instant case, the trial court issued an opinion addressing the only issue before it    J.T.S.'s weight of the evidence claim. Remand to the trial court is, therefore, unnecessary.[3]

_____

[3] Our standard of review of a weight claim is as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

Commonwealth v. Mbewe, 203 A.3d 983, 988–89 (Pa. Super. 2019) (citations and quotation marks omitted)

III.

J.T.S. contends that the trial court erred in denying his post-sentence motion challenging the weight of the evidence supporting his conviction of strangulation.[4]  J.T.S. maintains that he and S.M. recounted to the jury far different accounts of their altercation and he claims S.M.'s version of events was riddled with inconsistencies.  J.T.S. further argues that S.M.'s unreliable testimony failed to establish that he impeded her breathing or blood flow during their dispute, as required for a strangulation conviction.[5]  In support, J.T.S. reproduces a large excerpt from S.M.'s testimony on cross-examination at trial in which defense counsel questioned her extensively regarding alleged inconsistencies between her trial testimony and her initial statement to police and preliminary hearing testimony.  Specifically, counsel took issue with S.M.'s testimony regarding the timing of J.T.S.'s loading of his shotgun and whether or not she lost consciousness during the incident.

_____

[4] In his brief, J.T.S. repeatedly states that his post-sentence motion challenged the sufficiency of the evidence supporting his strangulation conviction.  However, a review of the motion itself, along with the trial court's opinion denying it, makes clear that he instead challenged the weight of the evidence, which is a separate and distinct claim from sufficiency.  We will nevertheless address his weight claim, despite his improper conflation of weight and sufficiency principles.

[5] J.T.S. was convicted of Strangulation by Applying Pressure to the Throat or Neck.  A person commits this offense if "the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:  (1) applying pressure to the throat or neck[.]"  18 Pa.C.S. § 2718(a)(1).

At trial, S.M. testified that J.T.S. placed both of his hands around her neck and strangled her so hard she "had gashes torn out of my neck [and] had fingerprints in my neck from him pulling me up and slamming me down and pulling me up and slamming me down while doing it." (N.T. Trial, at 26). J.T.C. choked her and left bruises over her entire body. (See id. at 26, 40). S.M. testified that she believed she was going to die, that she "could not breath at all" while J.T.S. was choking her, and that she started blacking out during the last choking episode. (Id. at 27).

S.M. emphatically averred that she told the truth about the altercation when giving her initial statement to police and during the preliminary hearing and that she was also telling the truth to the jury. (See id. at 52). Regarding whether or not she lost consciousness during the attack and the timing of its specific details, she explained that: "when I say I was blacking out, it wasn't that I was seeing stars, that I was going black. It was that [J.T.S.] was choking me so strong and so forcefully to where I had no oxygen and I was passing out and was incoherent to what was happening around me for an unknown amount of time." (Id. at 48).

Although defense counsel highlighted some possible inconsistencies in S.M.'s recounting of the episode during cross-examination and thoroughly tested her credibility, the jury was the ultimate fact-finder and the sole arbiter of the credibility of each witness. See Commonwealth v. Jacoby, 170 A.3d 1065, 1080 (Pa. 2017) (Issues of witness credibility include questions of

inconsistent testimony and jury is entitled to resolve any inconsistencies in Commonwealth's evidence in manner it sees fit.).

In addition, S.M.'s testimony was supported by that of responding Police Officer Clawson and Dr. Justin Blaum, the emergency medicine physician who examined her on the day of the incident. Officer Clawson testified that when he first observed S.M., she was shaken up and crying, was bleeding from her neck and had bruises on both of her arms. (See id. at 95). Dr. Blaum testified that his "clinical impression was physical assault, multiple superficial abrasions to the neck, chest wall, back, right upper arm, left upper arm, multiple contusions with soft tissue hematoma and abrasions to the neck, chest wall, back, right upper arm and left upper arm and left wrist." (Id. at 75-76). He also testified that the photographs of S.M.'s injuries were consistent with the assault as she described it. (See id. at 63-64).

Considering all of the evidence according to the governing principles cited above, we cannot conclude the trial court abused its discretion when it concluded the jury's verdict did not shock its sense of justice. The jury was free to reject J.T.S.'s self-serving testimony that he did not strangle S.M. and to resolve any minor inconsistencies in her recounting of the details of the

incident in the Commonwealth's favor. Consequently, J.T.S.'s weight claim fails.[6]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2020

_____

[6] To the extent J.T.S. seeks to raise a sufficiency of the evidence argument, it would not merit relief as the Commonwealth presented evidence clearly establishing all elements of the strangulation offense.